BREAUX, C. J.
This action was brought by Mrs. Laura T. Pellerin to have a note for $7,500 and mortgage bearing on her property decreed forgeries.
Mrs. Alice Corbett, to whom Robert J. Maloney (who was a notary public) transferred a promissory note, sought to foreclose her mortgage and collect the note.
Mrs. Pellerin, answering the foreclosure, in her petition for an injunction to enjoin the sale of the property, alleged that the act of mortgage and the note were forgeries and that the note was not made by her.
One of the positions taken by Mrs. Pellerin is that Mrs. Corbett held the note for over a *141 year, made no inquiry, remained indifferent, and trusted the notary as to the genuineness of the note and value of the property, and that it would have been different had she sought information.
We will here state this contention applies as well to Mrs. Pellerin as to Mrs. Corbett. Neither Mrs. Pellerin nor Mrs. Corbett were at all vigilant in informing themselves about their rights.
Plaintiff, Mrs. Pellerin, filed an amendment to her petition in which she alleged that she had sold a portion of the property described in the act of mortgage months before the date of the mortgage which she alleges is forged.
The case was tried and the district court .decided in favor of the plaintiff in injunction, airs. Laura T. Pellerin.
Documentary evidence was introduced.
The name of Mrs. Pellerin was signed to the act of mortgage in question on the 6th day of August, 1907 (the date of the instrument).
The property mortgaged consisted of three lots — A, B, and C, as per private sketch of survey. The boundary and measurement of each lot are given. Lot A measures 71 feet, 1 inch, 4 lines on Dumaine street by a depth of 197% feet corner of Dumaine and Dupre streets. Lot B measures 54 feet, 9 inches, 4 lines on Dumaine street by the same depth as lot A. Lot C measures 31 feet, 5 inches, on Dumaine street, by the same depth.
These three lots were described in the act of mortgage. The amount of the mortgage was $7,500.
The recorder of mortgages certified that the mortgages on these lots were canceled on the 8th day of August, 1907, including the mortgage of $7,500 on the lots A, B, and O.
The mortgagee named in the act was John M. Conner. The other mortgages were for similar amounts preceding in date the act of mortgage in favor of John M. Conner. The first in date thus canceled was for $1,000, March 22, 1899, Boyd, mortgagee, canceled on Maloney’s order. The second in favor of Lefebre to secure $700, dated July, 1900, and was executed for $1,000. Another mortgage in favor of the same mortgagee for $2,000, dated September 23, 1901. Another in favor of Williams for $500, dated December, 1903, also canceled on Maloney’s order. George Kopp, mortgagee, for $6,500, also canceled. In fact, all of the mortgages on the property were canceled.
The evidence shows that the lot C, before mentioned, was sold by Mrs. Pellerin to Mrs. Muller on the 1st day of July, 1903, by act of sale before Dreyfous, notary public, for the sum of $1,400 cash.
Defendant, Mrs. Corbett, filed in evidence the original acts of Mrs. Pellerin, passed before Notary Butler March 22, 1899. This act is genuine. The other act in the name of Mrs. Laura T. Pellerin as a mortgagor was passed, as before stated, before Maloney, notary, on August 6, 1907. This, according to the defendant, is the forged instrument.
Rev. Thos. E. Dulaney filed a third opposition and intervention in the suit on the 28th day of December, 1909, claiming that he is the holder of a note made and subscribed by Mrs. Laura T. Pellerin and by her indorsed for $7,500 and bearing interest at the rate of 8 per cent, per annum from August 6, 1907, on which note interest has been paid to August 7, 1909, and this note is paraphed ne varietur to identify it with an act of mortgage before Notary Maloney. The holder alleges that it is genuine and that the note held by Mrs. Corbett, plaintiff in executory process, is fraudulent and forged. He asked that the genuineness of his note be recognized. This note was sold to him by Maloney He prayed for judgment.
Mrs. Pellerin excepted to this third opposition and intervention. The exception was maintained and the suit dismissed. *143 There are facts sustaining two theories. According to one the signatures were forged, and according to the other they were genuine.
Taking up the first, Mrs. Pellerin stoutly denied under oath that she signed either the note or the mortgage. She had had a number of business dealings with the notary and entered into negotiations and obtained funds to meet her indebtedness and borrowed small amounts. She was pressed for the payment of a debt, called upon Maloney, and he interested himself in obtaining time for her. This continued until about a year preceding Maloney’s exposure. Mrs. Pellerin then applied to another lawyer and notary for advice and to attend to her business.
It may be that Maloney was not in the best of temper when she left his office in search of the advice of another member of the bar. Again, it may be that he thought of a fraudulent act of mortgage forged by him, it is charged, by imitating the signature of Mrs. Pellerin. It is strange that his wrongdoings did not come to light before they did. In this case it may be that he avoided disclosures by having the mortgages canceled and erased, as before mentioned, from the record of the mortgage office. This was done on the date before mentioned. From all the evidence we are of the opinion that he had the mortgages canceled to prevent discovery by Mrs. Pellerin and her counsel.
At the time that Mrs. Corbett brought foreclosure proceedings, her mortgage had been canceled. Part of the property had been sold before the date of the mortgage and part was sold afterward. This seems to have attracted the attention of no one.
About this time, but after the cancellation of the mortgages, Maloney informed the notary who had succeeded him as notary and attorney of Mrs. Pellerin that she owed him $5,000. The notary and attorney consulted his client. The indebtedness was taken up by him with Maloney, and finally it was adjusted and an agreement arrived at whereby Mrs. Pellerin obligated herself to pay $3,500 in full satisfaction of the claim. To meet that indebtedness she' sold one of her properties to a clerk in Maloney’s office.
If the mortgage was a forgery of Maloney, as it appears to have been, he showed forethought in having it canceled, for had he not had it canceled it is more than probable that it would have been discovered at the time that Mrs. Pellerin sold the property. Surely the purchaser would have inquired about existing mortgages. Exposure would have been unavoidable. But, if it was a genuine mortgage and note, what could have been the motive of Maloney in having the mortgage canceled, except to shield himself from exposure? As to the note, he may have felt safer as it was in the hands of Mrs. Corbett, who had no reason to suspect his dishonesty. Maloney paid her $600 interest on this note. The interest paid by him was never claimed, it seems, from Mrs. Pellerin. An itemized account was furnished from Maloney’s office, and it did not include these $600. Had it been a genuine note and mortgage he, doubtless, would have charged Mrs. Pellerin with the amount and would have been as anxious to collect that amount as he was to collect other items of indebtedness. He was very persistent in regard to these other items and threatened to sue. He said he had no security for the other items and insisted upon a settlement and security.
It is difficult to imagine that the plaintiff in injunction, Mrs. Pellerin, would have sold her property in face of the fact that Maloney had already obtained from her a mortgage of $7,500, for which he does not appear to have paid any amount whatever.
As to the necessity for executing the mortgage, there was none, for the asserted mortgagee did not owe the amount of $7,500.
*145 Another peculiar feature of the case is that these lots are separately described. It is strange that Mrs. Pellerin assumed to mortgage them all when she had already sold one of the number. In the sham mortgage for $6,500 the description is the same as in the mortgage now before us. Whoever, forged the mortgage did not know that Mrs. Pellerin had sold lot C.
Unless she is too dull to own property, she, at any rate, must have known that she had sold the property. There is no reason why the forger, unless' specially informed, should have kfiown it. But it was different as to the owner.
Now as to the facts referred to above, supporting the proposition or theory that the note was genuine, also the mortgage, the following is in point:
The attorney in charge, one of the most respectable of the bar, employed to reinstate, as far as possible, the law and notarial business of Maloney from the confused and chaotic condition in which it was, testified that plaintiff in injunction stated to him that she had signed a mortgage but not the note in question.
Although she denies the statement, she must have made it, or must have made some other statement which gave rise to the attorney’s understanding, as stated by him, that she had signed a mortgage. There is a bare possibility of a misunderstanding; there is a possibility that plaintiff in injunction may have understood that the attorney referred to another act in the notary’s office, which she swore she had signed, and which in reality she had signed, and not to the mortgage in question.
We must say that all of this,' as relates to the defendant in executory proceedings, is not very clear. There was some confusion on her part, and this may have led to the misunderstanding.
The attorney testified that she impressed him as being afraid, a nervous woman, but entirely truthful. He did not, however, agree with her statement about the mortgage.
We will not disturb the judgment. We go no further than to consider papers and the facts and circumstances surrounding and connected with the questions involved.
We must add that the evidence on this point is anything but satisfactory. Still, we do not-think that another conclusion would lead us nearer the truth. It must be said that the facts' previous to the testimony of the attorney just mentioned sustain the defense of forgery. There would not be the least cause for hesitation otherwise.
We conclude to leave the judgment as it is.
There was an agreement to produce the original acts. They were not produced. We did not have the opportunity, of which we would certainly very earnestly have availed ourselves, of comparing signatures with the original signature.
It is therefore ordered, adjudged, and decreed that the judgment appealed from is affirmed.